United States District Court
For the Northern District of California

**NOT FOR CITATION**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

TIMOTHY PETER RALBOVSKY,

      Plaintiff,

vs.

V. PENA; R. E. ALANIZ; R. BETANCOURT; D. PHERIGO; I. GUERRA; W. J. HILL; J. R. SOLIS; A. P. KANE; S. ORTIZ; E. Da ROSA; and DOES 1-50,

      Defendants.

                          /

No. C 04-4891 PJH (PR)

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**

This is a civil rights case filed pro se by a state prisoner. Defendants have moved for summary judgment, plaintiff has opposed the motion, and defendants have filed a reply. The motion is ready for decision.

**BACKGROUND**

Plaintiff attempted to mail to the legislature and governor three parcels containing a proposed bill requiring that prison disciplinary proceedings be tape-recorded. When some or all of the outgoing parcels were blocked, he filed a grievance related to the obstruction of his attempted mailing. He asserts that defendants violated his First Amendment rights by not allowing the mailings, and retaliated against him for attempting to mail the parcels and for his grievance.

**DISCUSSION**

*A.  Standard of Review*

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may

1  affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).
2  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury
3  to return a verdict for the nonmoving party. *Id.*
4        The moving party for summary judgment bears the initial burden of identifying those
5  portions of the pleadings, discovery and affidavits which demonstrate the absence of a
6  genuine issue of material fact. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323 (1986); *Nissan*
7  *Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). When the moving
8  party has met this burden of production, the nonmoving party must go beyond the
9  pleadings and, by its own affidavits or discovery, set forth specific facts showing that there
10  is a genuine issue for trial. If the nonmoving party fails to produce enough evidence to
11  show a genuine issue of material fact, the moving party wins. *Id.*
12  *B.   Analysis*
13      *1.   First Amendment claim*
14        Plaintiff contends that the failure to mail out the three envelopes containing his
15  proposed bill violated his First Amendment rights.
16        Prisoners enjoy a First Amendment right to send and receive mail. *Witherow v. Paff*,
17  52 F.3d 264, 265 (9th Cir. 1995) (citing *Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989)). A
18  prison, however, may adopt regulations or practices which impinge on a prisoner's First
19  Amendment rights as long as the regulations are "reasonably related to legitimate
20  penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). The *Turner* standard
21  applies to regulations and practices concerning all correspondence between prisoners and
22  to regulations concerning incoming mail received by prisoners from non-prisoners.
23  *Thornburgh*, 490 U.S. at 413. In the case of outgoing correspondence from prisoners to
24  non-prisoners, however, an exception to the *Turner* standard applies. Because outgoing
25  correspondence from prisoners does not, by its very nature, pose a serious threat to
26  internal prison order and security, there must be a closer fit between any regulation or
27  practice affecting such correspondence and the purpose it purports to serve. *Id.* at 411-12.
28  Censorship in such instances is justified only if (1) the regulation or practice in question

2

1  furthers a legitimate penological interest, and (2) the limitation on First Amendment

2  freedoms is no greater than necessary to further the particular government interest

3  involved.  *Procunier v. Martinez, 416 U.S. 396, 413 (1974), overruled on other grounds*,

4  *Thornburgh v. Abbott*, 490 U.S. 401, 413-14 (1989); *see, e.g., Witherow*, 52 F.3d at 265-66

5  (regulation requiring visual inspection of outgoing mail from inmates to certain public

6  officials *closely* related to legitimate penological interest of preventing prisoners from

7  disseminating harmful or offensive materials and avoids unnecessary intrusion) (emphasis

8  added).  This is not, however, a "least restrictive means" test.  *Id.* at 265.

9       There is no genuine issue of material fact but that the three packages submitted for

10 mailing by plaintiff carried unsigned certificates of service which said what the contents

11 supposedly were.[1]  Although plaintiff ridicules the contention, he has presented no

12 evidence which would generate a genuine issue of material fact as to defendant Alaniz's

13 statement that she felt she could not sign a certificate saying what was in the sealed

14 packages without knowing what in fact was in them, and that because they were

15 confidential mail to public officials she could not open the envelopes.  Alaniz also says that

16 it was mailroom policy not to sign certificates of service; plaintiff pounces upon this, saying

17 that there is no evidence of a written or formal policy.  But Alaniz did not say that there was,

18 so there is no genuine issue of fact as to this point, and in any event it would not be

19 material; it really does not matter to this motion whether Alaniz was or was not following a

20 policy.

21      It is perfectly evident that the mailroom employee's refusal to sign a false

22 declaration serves a legitimate penological objective, that of maintaining a standard of

23 honesty among employees and not misleading courts or government officials who might be

---

[1] It is unclear how plaintiff intended this to work; obviously the certificates of service were on the outside of the sealed envelopes.  Perhaps it was intended that the certificates should be mailed separately.  The court also notes that these were not filings, so far as appears from the record, so there appears to have been no need for such certificates.  If plaintiff's purpose was to obtain evidence that the packages were actually mailed, as defendants point out that could have been better achieved by use of various mailing options, such as certified mail.

3

recipients of such a statement, and that refraining from dishonestly signing such declarations is an action no greater than necessary to further the interest. That policy was also furthered by not sending out the envelopes but instead attempting to return them to plaintiff to allow him to decide what he wanted to do.

Defendant Alaniz is entitled to summary judgment on plaintiff's claim that she violated his First Amendment rights.

*2. Retaliation*

Plaintiff contends that defendant Guerra placed him in administrative segregation in retaliation for his attempt to mail out the packages, and that defendant DaRosa approved the placement, again in retaliation.

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted).

The prisoner bears the burden of pleading and proving absence of legitimate correctional goals for the conduct of which he complains. *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995). At that point, the burden shifts to the prison official to show, by a preponderance of the evidence, that the retaliatory action was narrowly tailored to serve a legitimate penological purpose. *Schroeder v. McDonald*, 55 F.3d 454, 461-62 (9th Cir. 1995) (defendants had qualified immunity for their decision to transfer prisoner to preserve internal order and discipline and maintain institutional security).

Retaliation claims brought by prisoners must be evaluated in light of concerns over "excessive judicial involvement in day-to-day prison management, which 'often squander[s] judicial resources with little offsetting benefit to anyone.'" *Pratt*, 65 F.3d at 807 (quoting *Sandin v. Conner*, 515 U.S. 472, 482 (1995)). In particular, courts should "'afford appropriate deference and flexibility' to prison officials in the evaluation of proffered

1 legitimate penological reasons for conduct alleged to be retaliatory." *Id.* (quoting *Sandin*,
2 515 U.S. at 482).

3 The following facts are undisputed except where indicated, in which case plaintiff's
4 view has been adopted for purposes of this decision.  About nine months after plaintiff had
5 unsuccessfully attempted to mail his packages, plaintiff and another prisoner got into a fight
6 on the yard.  Defendants, based on the official reports, contend that plaintiff and his
7 opponent would not stop fighting even when ordered to by guards in the tower and when
8 other inmates tried to separate them, and that it was necessary to use pepper spray.
9 Plaintiff contends, however, that they had stopped by the time guards arrived and that use
10 of pepper spray was "inadvertent or otherwise unnecessary."  Pl. P. & A. at 7.[2]  Defendant
11 Guerra ordered his officers to identify the more aggressive of the fighters and put that
12 person in administrative segregation.  Decl. Guerra ¶ 5.  Instead, a Lieutenant approved
13 use of a "marriage chrono" and put both inmates in segregation  *Id.* ¶ 6.  A "marriage
14 chrono" is a procedure where inmates apologize to each other and agree in writing that
15 they will not do so again.  *Id.*  When Guerra found out about the marriage chrono he
16 disapproved it and ordered that plaintiff be held in administrative segregation.  *Id.*  He says
17 that he did this because of the seriousness of the fight and concern for the safety of plaintiff
18 and for the security of the institution if plaintiff were in general population.  *Id.* ¶ 7.  Although
19 plaintiff disputes this, he bases his disagreement on no more than the common use of
20 marriage chronos to resolve enemy issues and his claim that he and the other inmate were
21 not enemies.  There is no evidence to support either contention, and in any event they
22 would not suffice to generate a genuine issue of material fact as to whether Guerra's action

---

24 [2] In support of this contention, plaintiff cites to an exhibit filed in support of his declaration, "exhibit D, pp 11-30."  Pl. P. & A. at 7, ¶ 2.  The exhibit contains classification
25 documents and mostly the record of the disciplinary proceeding held against him in the wake of the fight.  His reference to such a broad page span, pages eleven through thirty, is
26 insufficient to alert the court to the portion of the record which he contends supports his contention.  *See Orr v. Bank of America*, 285 F.3d 764, 774-75 & n. 14 (9th Cir. 2002)
27 (summary judgment; court may disregard deposition or affidavit if plaintiff fails to cite to specific page and paragraph) (citing *Huey v. UPS, Inc.*, 165 F.3d 1084, 1085 (7th Cir. 1999) ("judges
28 need not paw over the files without assistance from the parties")).

5

was taken because she was retaliating against plaintiff for his exercise of his First Amendment rights.

It is this placement in administrative segregation which plaintiff contends was the retaliatory act by defendant Guerra.  He has, however, completely failed to generate a genuine issue of material fact on the question of whether the placement served a legitimate penological purpose – it is clear on the undisputed facts that it did.

Plaintiff also contends that defendant DaRosa retaliated against him by approving on administrative review the lockup order by Guerra.  There is absolutely no evidence that any of the actions by DaRosa were motivated by a desire to retaliate.

For these reasons, summary judgment will be granted for defendants Guerra and DaRosa on the retaliation claims.

Plaintiff also contends that he was retained in administrative segregation, as opposed to being initially placed there, in retaliation for his exercise of First Amendment rights.  This claim is that defendants Hill, Solis, Kane, and Ortiz failed to overturn the segregation decision of Guerra and DaRosa, and that Pherigo, Hill, Solis and Kane were involved in other (unspecified) acts of retaliation.  There is, once again, no indication that the actions of these defendants were motivated by the long-past incident when plaintiff tried to mail out his proposed legislation.[3]  Their motion for summary judgment on this claim will be granted.

    *3.    Qualified immunity*

The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  The rule of qualified immunity "'provides ample protection to all but the plainly incompetent or those who knowingly violate the law;'"

---

[3] Plaintiff's citations to "Exhibits D, E, and F, inclusive, Pl.'s P. & A. at 18-19, are grossly inadequate.  Those exhibits consist of hundred of pages of documents.  For the reasons set out in footnote 2, above, these references are insufficient to generate an issue of fact.

6

defendants can have a reasonable, but mistaken, belief about the facts or about what the law requires in any given situation. *Saucier v. Katz*, 533 U.S. 194, 202 (2001) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).  "Therefore, regardless of whether the constitutional violation occurred, the [official] should prevail if the right asserted by the plaintiff was not 'clearly established' or the [official] could have reasonably believed that his particular conduct was lawful." *Romero v. Kitsap County*, 931 F.2d 624, 627 (9th Cir. 1991).  Qualified immunity is particularly amenable to summary judgment adjudication. *Martin v. City of Oceanside*, 360 F.3d 1078, 1081 (9th Cir. 2004).

A court considering a claim of qualified immunity must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right, then proceed to determine if the right was "clearly established." *Wilson v. Layne*, 526 U. S. 603 (1999); *Conn v. Gabbert*, 526 U.S. 286, 290 (1999).  The threshold question must be: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? *Saucier*, 533 U.S. at 201

"If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Saucier*, 533 U.S. at 201.  On the other hand, if a violation could be made out on the allegations, the next sequential step is to ask whether the right was clearly established.  *Id.*  This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition. *Id.* at 202.  The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.  *Id.*  If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate.  *Id.*

Even if the violated right is clearly established, qualified immunity shields an officer from suit when he makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances he confronted.  *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004); *Saucier*, 533 U.S. at 205-06.  If "the officer's mistake as to what

the law requires is reasonable . . . the officer is entitled to the immunity defense." *Id.* at 205.

Plaintiff's evidentiary allegations, as opposed to his conclusions such as that defendants' motives were retaliatory, are not sufficient, if proved, to show a violation of his constitutional rights, the first step of the *Saucier* analysis. *Saucier*, 533 U.S. at 201. Defendants therefore are entitled to qualified immunity as to plaintiff's claims for damages.

*4. Opposition*

Plaintiff supported his opposition to the motion for summary judgment with a short declaration supported by hundred of pages of copies of documents. The declaration says only that the documents "have been maintained by myself for the entire time period subsequent to their respective origins." Pl. decl. at ¶ 3. This is not sufficient to authenticate the documents, which mostly appear to have been generated by the prison. *See Orr*, 285 F.3d 764 at 773-778. Although the court concludes above that defendants are entitled to summary judgment on the facts which are undisputed, and that the facts which are disputed are not material, it concludes alternatively that as to disputed facts plaintiff has failed to properly support his version, and that the version of defendants requires that summary judgment be granted.

**CONCLUSION**

For the foregoing reasons, defendants' motion for summary judgment (document number 23 on the docket) is **GRANTED**. The clerk shall close the file.

**IT IS SO ORDERED.**

Dated: September 25, 2006.

PHYLLIS J. HAMILTON
United States District Judge

G:\PRO-SE\PJH\CR.04\RALBOVSKY891.SJ